UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
AJMEL A. QUERESHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0393

September 14, 2026

LETTER TO COUNSEL

Re: *Kristina P. v. Frank Bisignano, Commissioner, Social Security Administration*, Civil No. AAQ-25-03127

Dear Counsel:

On September 22, 2025, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for supplemental security income. ECF No. 1. I have considered the parties' cross-motions for summary judgment, ECF Nos. 12, 14, as well as Plaintiff's Reply in Support of her Motion, ECF No. 15. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, vacate the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

## I. The History of this Case

Plaintiff filed her claim for financial assistance on October 7, 2021, alleging a disability onset date of June 30, 2021. ECF No. 8, at 21. An Administrative Law Judge ("ALJ") denied Plaintiff's claim initially and on reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ, which took place telephonically on September 17, 2024. *Id*. Following that hearing, the ALJ determined Plaintiff did not have a disability within the meaning of the Social Security Act during the relevant time frame. *Id.* at 29. The Appeals Council denied Plaintiff's request for review, *id.* at 5; thus, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ found that Plaintiff suffered from the severe impairments of "degenerative joint disease of the right shoulder, hypothyroidism, diabetes, polycystic ovarian syndrome, obesity, major depressive disorder, anxiety disorder, and posttraumatic stress disorder." ECF No. 8, at 23. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except that she is limited to no more than occasional climbing of stairs or inclines, balancing, stooping, kneeling, crouching, crawling, or overhead reaching; no occupational hazards such

> as unprotected heights, dangerous machinery, ropes, ladders, or scaffolds; no more than simple, routine, repetitive tasks, that would be performed in a low stress work environment, defined as one involving no high volume productivity requirements and very infrequent unexpected changes; and no more than occasional interaction with the public, co-workers or supervisors.

*Id.* at 25. The ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy such as night cleaner, marker and non-postal mail clerk. *Id.* at 29. Therefore, the ALJ determined that Plaintiff did not have a disability. *Id.*

## II. Plaintiff's Arguments on Appeal

Plaintiff argues on appeal that the ALJ erroneously assessed Plaintiff's RFC. ECF No. 12, at 7. Specifically, Plaintiff argues that the ALJ failed to provide sufficient information to determine what the phrase "high volume productivity requirements" means. *Id.* at 8. As discussed below, Plaintiff's argument aligns with this Court's and Fourth Circuit precedent.

In order to determine a claimant's RFC, an ALJ must conduct a function-by-function assessment of the claimant's ability to do work-related activities. Social Security Ruling 96-8p. A proper function-by-function assessment of a claimant's abilities includes a "'narrative discussion describing how the evidence supports each conclusion . . .'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Social Security Ruling 96-8p). In addition, the assessment must have three components: (1) evidence; (2) logical explanation; and (3) conclusion. *See id.* Where an ALJ's decision has "applied the correct legal standards" and the factual findings are "supported by substantial evidence", the ALJ's determination should be affirmed. *Bird v. Comm'r of Soc Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).

In the present case, the ALJ made a RFC determination, in part, that Plaintiff must work in a "in a low stress work environment, defined as one involving no high volume productivity requirements and very infrequent unexpected changes". ECF No. 8, at 25. Plaintiff argues that the ALJ did not define this phrase in contravention of *Thomas*, 916 F.3d at 307, and *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019), among other cases. ECF No. 12, at 8-9.

In *Thomas*, the United States Court of Appeals for the Fourth Circuit remanded the ALJ's decision, in part, because the RFC included the phrase "production rate or demand pace," which the ALJ never defined or explained. 916 F.3d at 312. The court found that the lack of definition made it impossible to assess whether such limitations were supported by substantial evidence, a requirement when reviewing an ALJ's determination. *Id.* Similarly, in *Perry*, where "non-production oriented work setting" was not defined, and held no established regulatory definition, the Court remanded because they could not assess "whether a limitation to 'non-production oriented work settings[s]' properly accounts for [Plaintiff's] impairments . . ." 765 F. App'x at

870. Most recently, the Fourth Circuit in *Linger v. Comm'r of Soc. Sec.,* concluded that remand was appropriate where the ALJ failed to define "with no fast[-]paced production requirements." No. 22-2192, 2025 WL 40548, at *4, *5 (4th Cir. Jan. 7, 2025). There, the Court likewise determined that, because of the lack of definition, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion. *Id.*

This case is similar to the Fourth Circuit's decisions above. As in those cases, the ALJ, when formulating their hypothetical to the Vocational Expert, asked them if Plaintiff could perform work in the marketplace if, among other things, Plaintiff was limited to work in "a low stress work environment" defined as "involving no *high volume productivity requirements* and very infrequent unexpected changes." *See* ECF No. 8, at 62-63 (emphasis added).

This Court has explained that the use of terms such as "high volume", "high quota", or "fast paced" does not cure the deficiency with terms such as "production" or "productivity" requirements, but makes it worse. *See Joeann S. v. Bisignano*, No. AAQ-25-01954, 2026 WL 2110570, at *2 (D. Md. Jul. 22, 2026) (finding that "no fast-paced production requirements such as fast paced assembly line work or high-volume piecemeal quotas" was not sufficiently precise); *Christine D. v. Bisignano*, No. 25-2044-DRM, 2026 WL 1501145, at *5 (D. Md. May 29, 2026) ("the RFC term 'a high-quota production-rate pace,' is 'analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect.' The added descriptor 'high-quota' does not cure the ambiguity, because this is a purely relative term." (internal citations omitted)); *Madison S. v. Bisignano*, No. 24-2982-DRM, 2025 WL 3157635, at *3 (D. Md. Nov. 12, 2025) ("the ALJ's use of the terms 'fast-paced production' and 'fast-paced assembly line work or high-volume piecemeal quotas' does not provide sufficient information for the Court to discern its intended meaning, making it effectively impossible to evaluate whether the decision is supported by substantial evidence."); *Christine D. v. Kijakazi*, No. BPG-21-926, 2022 WL 20652784, at *2 (D. Md. Jun. 13, 2022) ("the ALJ's use of the phrase 'high volume production rate pace' is analogous to the phrase deemed inadequate in *Thomas*"). This is because, as this Court has explained, the term "high volume" is purely a relative term. *Lyaundra C. v. Bisignano*, No. 1:24-cv-03659, 2026 WL 507423, at *4 (D. Md. Feb. 24, 2026); *Katherine P. v. Bisignano*, No. 1:25-cv-00377-DRM, 2026 WL 496632, at *4 (D. Md. Feb. 23, 2026).

The Commissioner, while acknowledging caselaw to the contrary, ECF No. 14, at 8, nonetheless, argues that the Court should follow an earlier decision, *Sizemore v. Berryhill*, from the Fourth Circuit. *See* ECF No. 14, at 7 (citing *Sizemore v. Berryhill*, 878 F.3d 72, 79-81 (4th Cir. 2017)). The Fourth Circuit's decision in *Sizemore*, however, did not use the term "high volume" production but made clear it must be a "non-production job". *See id.* (approving a RFC limiting the claimant to "work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact."). By prohibiting all production, the ALJ avoided the problem that arises from the use of relative terms such as "high volume." This

Court's previous decision in *Kenneth L. v. Kijakzi*, on which the Commissioner also relies, ECF No. 14, at 6-7, is distinguishable on the same grounds. *See* No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sep. 15, 2021) ("In contrast, 'no strict production quotas' contains terms that are subject to common understanding. Unlike the term in *Thomas*, which required the Court to determine what pace or rate was required in 'demand' or 'production' occupations, here the ALJ determined that Plaintiff could not work in occupations with 'strict production quotas.').

Further, the Fourth Circuit in *Sizemore* did not directly address the precise issue in this case—whether the vocational expert understood the hypothetical. Rather, the analysis in *Sizemore* focused on whether the ALJ had adequately explained his basis for formulating the limitation he adopted. *See id.* at 81 ("The opinions of these two doctors thus provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to stay on task while performing "simple one, two-step tasks," as long as he was "working in low stress non-production jobs with no public contact.").

As previously noted, a proper RFC assessment contains evidence, a logical explanation, and a conclusion. *Thomas,* 916 F.3d at 311. Without an understanding of what "high volume productivity requirements" means, it is not possible to determine where the logical explanation lies between the provided evidence and the stated conclusion. Accordingly, in light of the foregoing, the ALJ did not perform a proper function by function assessment and therefore the Court must remand this case.

## III. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 14, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is VACATED. This case is REMANDED for further proceedings in accordance with this Opinion.

Despite the informal nature of this letter, it is an Order of the Court and should be treated accordingly. An implementing Order follows.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge